UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

RYKER LOUIS SHAMPO,

        Plaintiff,

        v.                              Case No. 25-cv-1742-bbc

SOUTHERN HEALTHCARE PROVIDERS,
JODY MALONEY,
JENNIFER MCCOMMONS, and
C. OLIVE,

        Defendants.

---

## SCREENING ORDER

---

      Plaintiff Ryker Louis Shampo, who is currently confined at the Oconto County Jail and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Shampo's motion for leave to proceed without prepayment of the filing fee, his two motions to amend the complaint, his motion to appoint counsel, and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

      Shampo has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Shampo has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $7.61. Shampo's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

Rather than filing a single complaint containing all of his allegations against all of the people he wants to sue, Shampo filed a complaint, followed by a motion to amend a Defendant's name, followed by another motion to amend to add additional allegations and claims. Spreading allegations, claims, and requests for relief over multiple filings is confusing and does not comply with Civil L. R. 15, which requires that "[a]ny amendment to a pleading . . . reproduce the entire pleading as amended, and [] not incorporate any prior pleading by reference." Accordingly, the Court will deny Shampo's motions to amend and will give him the opportunity to file an amended complaint that contains all of his allegations against all of the people he wants to sue.

As Shampo prepares his amended complaint, he is advised that, while multiple claims against a single party are fine, a plaintiff cannot bring unrelated claims against different defendants in the same case. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). A plaintiff may join multiple defendants in a single case only if the plaintiff asserts at least one claim against each defendant that arises out of the same events or incidents and involves questions of law or fact that are common to all the defendants. Fed. R. Civ. P. 20(a)(2); *George*, 507 F.3d at 607; *Wheeler v. Wexford Health Sources, Inc*., 689 F.3d 680, 683 (7th Cir. 2012) (joinder of multiple defendants in one case "is limited to claims arising from the same transaction or series of related transactions"). For example, it would not be proper under Rules 18 and 20 to join in a single case a claim against a nurse for failing to provide treatment for a particular condition with a claim against a doctor for failing to provide treatment on a different date for a different condition. In short, unrelated claims against different defendants belong in different cases.

Shampo is also reminded that, under §1983, a plaintiff cannot hold one person liable for the misconduct of another, nor can he sue a private corporate employer for the misconduct of the

employees unless the plaintiff can show "that his injury was caused by a [corporate] policy, custom, or practice of deliberate indifference to serious medical needs, or a series of bad acts that together raise the inference of such a policy." *Shields v. Ill. Dep't of Corr.*, 746 F.3d 782, 796 (7th Cir. 2014). With regard to making such a showing, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. In other words, baldly accusing an employer of having a policy of denying mental health care to prisoners will be insufficient to state a claim if the accusation is not supported by specific factual allegations. Moreover, a single prisoner's experience is insufficient for the Court to reasonably infer that a policy or company-wide practice exists.

Shampo should prepare his amended complaint as if he is telling a story to someone who knows nothing about his situation. This means that he should explain: (1) what happened to make him believe he has a legal claim; (2) when it happened; (3) who was involved; (4) how it impacted him; and (5) what relief he would like the Court to provide. Shampo should set forth his allegations in short and plain statements, and he should ensure that his amended complaint can be understood by someone who is not familiar with the facts of his case.

Shampo is again advised that an amended complaint will replace the prior complaints, so it must be complete in itself without reference to prior filings. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If an amended complaint is

3

received, the Court will screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court will dismiss this case based on Shampo's failure to comply with the Court's order.

### MOTION TO APPOINT COUNSEL

On November 26, 2025, Shampo filed a motion to appoint counsel. He asserts that he has attempted to obtain counsel from "multiple law offices" but has not received a response. He also asserts that he is a high school graduate who graduated two years late and was in special education. He also suffers from "severe mental health disorders" such as anxiety and depression, as well as attention deficit disorder.

In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" *Henderson v. Ghosh*, 755 F.3d 559, 564 (7th Cir. 2014) (quoting *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014)). Accordingly, in exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007)).

The Court cannot reasonably infer from Shampo's vague statements that he has satisfied the first prong of the standard. Although he references contacting "multiple law offices," he does not identify who he contacted or when he contacted them. The Court will therefore deny his

motion to appoint counsel on that basis. The Court notes, however, that even if Shampo had satisfied the first prong, the Court would have denied his motion because he appears capable of representing himself at this stage of the case. When considering whether a plaintiff has the capacity to represent himself, the Court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." *Pennewell v. Parish*, 923 F.3d 486, 491 (7th Cir. 2019).

All that Shampo must do at this stage is tell the Court what happened in an amended complaint. His amended complaint need not—indeed, *should* not—contain legal arguments or case citations. As explained, Shampo should prepare his amended complaint like he is telling a story to someone who knows nothing about the facts of his case. Shampo has personal knowledge of what happened, so the Court is confident that he can prepare an amended complaint on his own. The Court encourages Shampo to review the enclosed litigation guide. The guide contains helpful information about how the case will proceed and has a glossary of commonly used legal terminology.

If new challenges arise that Shampo does not believe he can overcome on his own, he may renew his motion. If he does so, he should be specific about the challenges he faces and the efforts he has made to overcome them. He should also specifically describe the efforts he made to locate a lawyer without the Court's help, including identifying at least three lawyers that he contacted. He should state when he contacted them and enclose copies of any responses he received from them.

**IT IS THEREFORE ORDERED** that Shampo's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Shampo's motion to amend (Dkt. No. 6) and his second motion to amend (Dkt. No. 9) are **DENIED**.

**IT IS FURTHER ORDERED** that Shampo's motion to appoint counsel (Dkt. No. 10) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that on or before **January 5, 2026**, Shampo may file an amended complaint curing the defects described in this decision.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Shampo a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions" along with this order.

**IT IS FURTHER ORDERED** that the agency having custody of Shampo shall collect from his institution trust account the $342.39 balance of the filing fee by collecting monthly payments from Shampo's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Shampo is transferred to another institution, the transferring institution shall forward a copy of this Order along with Shampo's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Shampo is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable Byron B. Conway
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Shampo is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Green Bay, Wisconsin on December 10, 2025.

> s/ *Byron B. Conway*
> BYRON B. CONWAY
> United States District Judge